## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BEN R. BACKUS, ET AL | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civ. No. 3:09-CV-1256 |
| | : | |
| CONNECTICUT COMMUNITY BANK, N.A., owner of WESTPORT NATIONAL BANK | : | |
| | : | |
| Defendant. | : | |

## <u>RULING ON MOTIONS TO DISMISS AND REMAND</u>

This action arises out of the infamous Ponzi scheme conducted by Bernie Madoff. Plaintiffs Ben R. Backus and twenty-six other individuals ("named Plaintiffs") bring suit against Defendant Connecticut Community Bank, as owner of Westport National Bank. The Complaint alleges breach of contract, theft, and fraud, as well as violations of the Connecticut Unfair Trade Practices Act, CONN. GEN. STATS. § 42-110(a) *et seq*. Plaintiffs also allege breach of contract, theft, and violations of the Connecticut Unfair Trade Practices Act, CONN. GEN. STATS. § 42-110(a) *et seq*., on behalf of a putative class. The action was originally filed in Connecticut Superior Court on July 8, 2009. On August 6, 2009, the case was removed to the District of Connecticut. On August 31, 2009, Plaintiffs filed a Motion to Remand Named Plaintiffs' Individual Claims [Doc. No. 15] as well as an Amended Complaint. Also on August 31, 2009, Defendant filed a Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(6) and the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §§ 77p & 78bb(f) [Doc. No. 14], followed by a Motion to Dismiss the Amended Complaint on September 21, 2009 [Doc. No. 37]. Plaintiffs filed a Motion to Remand the Entire Action on September 8, 2009 [Doc. No. 24].

For the reasons stated herein, Plaintiffs' Motion to Remand the Entire Action [Doc.

24] is **denied.**  Plaintiffs' Motion to Remand Named Plaintiffs' Individual Claims [Doc. No. 15]

is **granted.**  Defendant's Motions to Dismiss [Doc. Nos. 14, 37] are **granted in part and denied**

**in part.**

**I.    BACKGROUND**

The following facts are recited according to the complaint.  See Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009).  The 27 named Plaintiffs are residents of

Connecticut who deposited their retirement funds into accounts at Westport National Bank

("WNB"), pursuant to custodian agreements.  All named Plaintiffs maintained these accounts as

of December 11, 2008.  Defendant Connecticut Community Bank ("Defendant") is a nationally

chartered bank that owns and operates offices in Fairfield County.  WNB is a division of

Connecticut Community Bank.  Defendant's principal place of business is Westport, CT, where

the WNB division also operates.

As of 1999, Plaintiffs were clients of PSCC Services, Inc. ("PSCC"), a Connecticut

corporation in the business of providing retirement fund investment consulting services.  In or

about July 1999, PSCC recommended that its clients, including named Plaintiffs, invest their

retirement funds with Bernard L. Madoff Investment Securities, LLC ("BLMIS"). (Amend.

Compl. ¶ 35.)  On the advice of PSCC, Plaintiffs established accounts at WNB for the purpose of

pooling their retirement funds together in a collective investment account (in the name of WNB),

to be placed under BLMIS' investment management and "used for the purchase and sale of

securities by Madoff for the benefit of the account holders." (Id. ¶ 36.)

Pursuant to this plan, WNB established an investment account in its name at BLMIS,

funded with deposits made by PSCC's clients. (Id.)  WNB entered into custodian agreements

with each PSCC depositor.

Each custodian agreement states in part:

- WNB would invest all cash and cash equivalents received from the Principal "in [WNB's] deposit money market account until [WNB] transfers the funds to Bernard L. Madoff Investment Securities ("BLMIS") . . ."

- The Principal "authorize[d] [WNB] to transmit to BLMIS all funds received by [WNB] from the Principal . . ."  WNB would "enter into an agreement with BLMIS under which BLMIS will have full discretionary authority as to the manner in which funds are invested."  The Principal's funds would be aggregated with other funds for transmission to BLMIS, and the omnibus account maintained with BLMIS would be named "Westport National Bank."

- WNB would "follow such reasonable written directions which the Principal may deliver to [WNB] at any time, . . . including to request that BLMIS return assets of the Principal to [WNB] and for [WNB] to remit cash or cash equivalents to the Principal."

- WNB "shall maintain adequate records indicating ownership by the Principal; of investments with BLMIS and held by [WNB] as custodian . . ."

- WNB "shall render at least annually statements reflecting the property held by it as custodian . . ."

- "The custodial services fees of [WNB]. . . shall be an annual charge of .006 of the average assets . . ."

(Pls.' Mot. to Remand Indiv., Ex. A.)[1]

Plaintiffs allege that these agreements required WNB to maintain records detailing

BLMIS' investments, act as custodian for each account by holding these investments, and render

annual statements reflecting investments made by Madoff and held by WNB as custodian.

---

[1] Although the custodial agreements have not been included in the Complaint, the Court may consider them on a motion to dismiss because they are integral to the claims alleged.  "Even when a document is not incorporated by reference [in the complaint], the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint."  Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006).

(Amend. Compl. ¶ 36.)  The agreements further provide that WNB was to receive an annual fee from each PSCC depositor, paid quarterly from each account and based on the average value of the investments WNB held in such account. (Id.)  The fees were collected directly out of each depositor's account.  PSCC also charged fees that WNB collected directly out of the individual accounts.

Plaintiffs agreed that WNB would place their retirement funds under the management of Madoff, pursuant to the custodian agreements. (Id. ¶ 37.)  WNB thereby invested the collective account in shares of BLM 1, a BLMIS entity supposedly holding securities for tax-qualified retirement plans, and BLM 2, a BLMIS entity supposedly holding securities for IRA accounts. Although Madoff was operating a now infamous Ponzi scheme and BLMIS' security offerings were fraudulent (Id. ¶ 47), Plaintiffs continued to receive annual statements "from WNB purporting to detail the activity, holdings and value of their accounts." (Id. ¶ 38.)

In essence, the Amended Complaint alleges that "WNB falsely represented that it was fulfilling its role as custodian for Plaintiffs and its other retirement account holders." (Amend. Compl. at 1.)  Plaintiffs argue that the custodial agreements required WNB to maintain Plaintiffs' assets in its possession except for short term transmissions to BLMIS for the purpose of trades and WNB therefore breached the agreements when it failed to require Madoff to "transmit or otherwise arrange to hold the purported investment made by Madoff."  This failure allowed Madoff to perpetrate his infamous Ponzi scheme. (Id. ¶ 39.)  Plaintiffs argue that WNB's false representations that it was holding shares of BLM 1 and BLM 2 on their behalf, that it was purchasing and selling shares of these entities, and that the shares had a stated unit market value, enabled WNB to intentionally and wrongly misappropriate depositors' funds from depositors by

-4-

charging unjustified fees. (Id. ¶¶ 62-64.)

According to Plaintiffs, "WNB purported to purchase shares of BLM 1 or BLM 2 (as the case may be) with PSCC depositors' contributions to the accounts" and "purported to sell shares of BLM 1 or BLM 2 in each PSCC depositor account (as the case may be) to fund PSCC depositors' redemption requests and account fees." (Id. ¶ 41.)  From July 1999 to December 11, 2008, WNB issued annual account statements setting forth the amount of any deposits into each account, the purchase of purported shares in BLM 1 or BLM 2, the sale and redemption of purported shares in these funds, fee charges, the number of purported shares in BLM 1 or BLM 2 held in each account and "the unit market value of the purported shares." (Id. ¶ 42.)  However, because these reported holdings did not actually exist, Plaintiffs argue that the statements were fraudulent.  Plaintiffs further allege that WNB charged and collected millions of dollars in false and unjustified fees. (Id. ¶ 42.)  Plaintiffs submit that WNB's fraudulent conduct caused the loss of their retirement funds.  The suit seeks the return as damages of 1) lost retirement funds; and 2) improperly charged fees.

## II.    STANDARD OF REVIEW

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).  In ruling on a motion under FED. R. CIV. P. 12(b)(6), the court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy

v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

The district court may dismiss a claim under FED. R. CIV. P. 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft,129 S. Ct. at 1949.

For the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true. However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Although detailed factual allegations are not required, a plaintiff must provide the grounds of its entitlement to relief beyond mere "labels and conclusions." Bell Atlantic, 550 U.S. at 555.

Despite the four pending motions in this case, there is only one issue at hand. Defendant's Motion to Dismiss argues that each of the state law claims is precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. §§ 77p & 78bb(f). Plaintiffs argue in their Motions to Remand, however, that SLUSA does not apply, removal was improper, and remand is necessary. Therefore, the question to be determined is whether SLUSA is applicable to the seven counts in Amended Complaint. If SLUSA applies, the count must be dismissed. If SLUSA does not apply, the count must be remanded to the Superior Court.

In response to perceived abuse of the class action device in litigation involving nationally traded securities, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z-1; 78u-4. Among other reforms, PSLRA imposes heightened pleading

-6-

requirements and authorizes a stay of discovery pending resolution of a motion to dismiss in actions brought pursuant to Section 10(b) and Rule 10b-5. Congress' enactment of the PSLRA, however, had the unintended consequence of encouraging plaintiffs to bring class actions involving securities fraud under state law to circumvent these stringent requirements. In response, Congress enacted SLUSA to prevent plaintiffs from seeking to evade the protections against abusive securities litigation codified in the PSLRA. SLUSA provides:

> CLASS ACTION LIMITATIONS
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-
>
> (A) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. §§ 77p(b). In other words, SLUSA mandates dismissal of any action that meets the following criteria: 1) a covered class action; 2) brought under state statutory or common law; 3) alleging misrepresentation or omission of a material fact; 4) in connection with the purchase or sale; 5) of a covered security.

The Supreme Court found that SLUSA should be interpreted broadly. "A narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose, viz., to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the 1995 Act." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 86 (2006); see Anderson v. Merrill Lynch Pierce Fenner & Smith, 521 F.3d 1278, 1284 (10th Cir. 2008). However, "while plaintiffs may not avoid SLUSA preemption simply by artful pleading that avoids the actual words

'misrepresentation' or 'fraud,' neither may defendants avoid every possible claim by recasting any lawsuit in which a securities broker is a defendant into a securities fraud action." Norman v. Salomon Smith Barney, Inc., 350 F. Supp. 2d 382, 386 (S.D.N.Y. 2004).

Additionally, the law of the Second Circuit requires a claim-by-claim analysis as to SLUSA preemption. Dabit v. Merrill Lynch, Pierce, Fenner & Smith Inc., 395 F.3d 25, 47 (2d Cir. 2005), rev'd as to other grounds, 547 U.S. 71 (2006); Gray v. Seaboard Securities,126 F. App'x. 14, 16 (2d Cir. 2005); LaSala v. Bank of Cyprus Public Co. Ltd., 510 F. Supp. 2d 246, 273 n.10 (S.D.N.Y. 2007). The presence of one or more preempted claims in a complaint does not require dismissal of the entire action under SLUSA.

## III.   DISCUSSION

The Court is mindful of its previous ruling denying a motion to stay discovery in a parallel state court case under SLUSA and the PSLRA. However, the question of SLUSA preemption pursuant to the pending motions requires a more detailed and *de novo* analysis.

### A. State Law

There is no dispute that this action meets the first SLUSA criteria, that the action is "based upon the statutory or common law of any State."

### B. Covered Security

Under SLUSA, a "covered security" is a security "that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 77r(b)." 15 U.S.C. § 77p(f)(3). In turn, § 77r(b)(1) defines "covered security" as a security:

> (A) listed, or authorized for listing, on the New York Stock Exchange or the American Stock Exchange, or listed, or authorized for listing, on the National Market System of the NASDAQ Stock Market (or any successor to such entities)."

(B) listed, or authorized for listing, on a national securities exchange (or tier or segment thereof) that has listing standards that the Commission determines by rule (on its own initiative or on the basis of a petition) are substantially similar to the listing standards applicable to securities described in subparagraph (A); or

© is a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A) or (B).

Plaintiffs make a passing argument that the securities at issue are not 'covered' because BLM 1 and BLM 2,[2] the entities in which WNB invested Plaintiffs accounts, do not fall within this definition. (Pls.' Mot. to Remand Entire at 11.)   However, this argument is without merit as Plaintiffs admit that the individual securities fraudulently represented to be bought, sold, and held by the BLM 1 and 2 entities are covered securities.  These securities, not the BLM entities, are at the heart of this case.

### C. Covered Class Action

SLUSA only applies to "covered class actions," defined as an action in which:

(I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or

(II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members."

15 U.S.C. § 77p(f)(2)(A)(I).  Counts I-IV of the Amended Complaint are not class actions.  They are brought on behalf of only the named Plaintiffs.  Therefore, Plaintiffs' Motion to Remand Named Plaintiffs' Individual Claims [Doc. No. 15] is **granted**.  Defendant's Motion to Dismiss [Doc. No. 37] is **denied** as to Counts I-IV.  However, there is no dispute that Counts V, VI, and

---

[2]BLM 1 supposedly held securities for tax-qualified retirement plans, while BLM 2 supposedly held securities for IRA accounts.

VII of the Amended Complaint are covered class actions.

### D.  In Connection With the Purchase or Sale of a Covered Security

The most difficult question before the Court is whether the remaining claims are "in connection with the purchase or sale of a covered security."  In Dabit, 547 U.S. at 85-86, the Supreme Court held that according to ordinary principals of statutory interpretation, as well as the particular concerns that resulted in SLUSA's enactment, this phrase should be read broadly. The Court held that "it is enough that the fraud alleged 'coincide' with a securities transaction-whether by the plaintiff or by someone else." Id. at 85.  The Court further instructed that SLUSA be read with the "presumption that Congress envisioned a broad construction" of the statute so that the most troublesome class actions would be subject to the PSLRA. Id. at 86.

Courts have deemed that whether the fraud 'coincides' with the purchase or sale of a covered security is the critical question when determining whether SLUSA precludes a state law allegation.[3]  The Ninth Circuit held that in order to satisfy this requirement, the fraud need not relate "to the investment value of the securities themselves," but "must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection." Falkowski, 309 F.3d at 1131.

Defendant argues that because the Complaint coincides with a Ponzi scheme, it satisfies this requirement.  However, whether WNB's misrepresentations were in connection with the purchase or sale of securities is more difficult than Defendant suggests.  While there is no question that Madoff's Ponzi scheme was in connection with the purchase and sale of securities,

---

[3] S.E.C. v. Zandford, 535 U.S. 813, 825 (2002); Falkowski v. Imation Corp., 309 F.3d 1123, 1131 (9th Cir. 2002) (holding that claim that defendant concealed impending accounting write-off coincided with the value and timing of a securities transaction and therefore satisfied SLUSA's 'in connection with' requirement).

Plaintiffs do not allege that Defendant knowingly participated.  The Court must determine whether WNB's independent misrepresentations also coincided with securities transactions.

Plaintiffs allege that WNB committed fraud by misrepresenting its fulfillment of the custodial role and by collecting fraudulent fees.  The crux of Plaintiffs' allegations is that WNB reported that *it* held securities of a certain value and charged fees on this basis, when in truth *WNB* held no such securities.  Specifically, Plaintiffs submit that: 1) WNB's annual account statements setting forth each account's "holdings, activity and total value" were fraudulent; 2) WNB calculated and charged fees based on fraudulent values of "purported shares of BLM 1 or BLM 2;" and 3) "the transactions involving BLM 1 and BLM 2 reported to the named Plaintiffs and other PSCC depositors by WNB did not occur." (Amend. Compl. ¶¶ 42-44.)  Plaintiffs allege not fraud in the inducement of investments, but fraud in the reporting of investments previously made.

The Court must therefore examine whether the Amended Complaint sufficiently alleges that WNB's own misrepresentations and omissions coincide with the purchase and sale of securities.  Courts have found SLUSA preemption even in cases where the defendant accused of fraud did not itself buy and sell securities.  In Gray v. Seaboard Securities, 126 F. App'x. 14 (2d Cir. 2005), the Second Circuit held that misrepresentations concerning the source of investment advice were in connection with the purchase and sale of securities.  In Cordova v. Lehman Bros. Inc., 413 F. Supp. 2d 1309 (S.D. Fla. 2006), the court found SLUSA preemption in a relationship similar to the one at hand.  In that case, plaintiffs agreed to invest with PFA, a fraudulent pension fund, because major financial institutions agreed to serve as post-investment custodians and/or trustees.  The investors alleged that the major financial institutions aided and abetted the fraud by, *inter alia*, allowing their names, logos, and reputations to be used in the pension fund's

-11-

marketing materials, failing to alert investors of false statements made by the pension fund, and falsely reassuring the investors of the safety of their investments.  The court held that plaintiffs' claims were in connection with PFA's securities fraud and therefore preempted by SLUSA.  The court rejected investors' arguments that SLUSA did not apply because their state law claims were based on post-investment retention of funds. Id. at 1318-20.  As in Cordova, WNB's allegedly fraudulent statements led Plaintiffs to believe that their security holdings were safeguarded by a trusted bank.  While Plaintiffs in this case do use the term inducement, it is easy to see how WNB's allegedly fraudulent account statements persuaded Plaintiffs to maintain their investments in fraudulent securities, further connecting the allegations to securities transactions.

In their Motion to Remand, Plaintiffs claim they do not allege that WNB made intentional misstatements in connection with investment activity.  However, looking closely at the Complaint's language, it appears that Plaintiffs argue not that WNB simply endorsed Maddoff's misrepresentations, but that WNB's statements were misrepresentations of their *own* knowledge concerning securities transactions.  Plaintiffs do not allege that WNB knew of Madoff's Ponzi scheme.  They do argue, however, that WNB intentionally misreported its own securities holdings.  Specifically, Plaintiffs allege that "at all times mentioned herein, WNB *knew* that it had *no securities* or other assets in its possession as custodian for the members of the plaintiff class." (Amend. Compl. ¶ 60) (emphasis added).  The Complaint continues: WNB  "*knew* it had no permissible basis . . . for charging the members of the Plaintiff class annual percentage fees" and Defendant *intended* to misappropriate to itself funds rightfully belonging to the members of the Plaintiff Class. (Id. ¶¶ 61, 62)(emphasis added).

The Complaint language such as *"WNB* falsely represented that *it* was holding *shares of* BLM 1 or BLM 2," (Id. ¶ 63) (emphasis added) connects WNB's alleged misconduct to the

-12-

purchase and sale of securities.  Furthermore, the custodian agreement between each Plaintiff and WNB states: "it is the Principal's intent to transfer cash or cash equivalents to the Bank [WNB], as provided herein *for investment*." (Pls.' Mot. to Remand Indiv., Ex. A ¶ 1.)  In sum, the Amended Complaint alleges that WNB made knowing misrepresentations concerning the value of securities and intentionally charged fees based on purported but false security holdings.  The merits of these contentions are not at issue.  Whether Plaintiffs can prove these allegations is not yet relevant, the issue at hand is solely the facts as alleged.

The Third Circuit has set out helpful guideposts for deciding whether the 'in connection with' element of SLUSA is satisfied.  In Rowinski v. Salomon Smith Barney Inc., 398 F.3d 294 (3d Cir. 2005), plaintiffs alleged that defendant provided biased investment advice and charged fees based on this advice.  In holding that breach of contract and unjust enrichment claims were barred by SLUSA, the Third Circuit provided four factors to help distinguish between preempted claims and those remaining within the ambit of state law: "first, whether the covered class action alleges a 'fraudulent scheme' that 'coincides' with the purchase or sale of securities, second, whether the complaint alleges a material misrepresentation or omission 'disseminated to the public in a medium upon which a reasonable investor would rely, third, whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities, and fourth, whether the prayer for relief 'connects' the state law claims to the purchase or sale of securities." Id. at 302 (internal citations omitted).

The Third Circuit identifies these factors as "guideposts in a flexible preemption inquiry" and this Court finds them instructive in a difficult analysis. See id. at n.7.  The first factor is whether the complaint alleges a fraudulent scheme coinciding with the purchase or sale of securities.  Here, Plaintiffs allege a scheme of false representations concerning the 'purported'

-13-

purchase and sale of securities.  Plaintiffs allege that WNB knowingly sent false account

statements detailing the purchase, sale, and value of securities.  Furthermore, Plaintiffs allege that

WNB charged fees based on the value of securities which it purportedly, but did not actually,

hold.  This scheme not only coincides with, but centers on, the purchase and sale of securities.

However, the fraud was not disseminated to the public and did not concern investment

advice, on which an investor would rely.  Thus, although the second guidepost is not met, our

analysis is not finished.  The four factors are not requirements but considerations to be taken into

account.

The third factor is met here, as the very purpose of the relationship between Plaintiffs and

WNB was to trade in securities.  The custodian agreement governing the parties' dealings states

that the relationship was created for the purpose of investment in securities: "it is the Principal's

intent to transfer cash or cash equivalents to the Bank [WNB], as provided herein for

investment." (Pls.' Mot. to Remand Indiv., Ex. A ¶ 1.)  The Amended Complaint clearly states

that the specific investment contemplated by the agreement was the securities traded by BLMIS

and that WNB was to buy and sell shares of BLM 1 and BLM 2 on behalf of the depositors.

(Amend. Compl. ¶ 36(b).)  Other courts have found that when "the purpose of the investment

agreements was to utilize [the plaintiff's] assets and expand upon those assets, presumably with

the purchase and sale of securities, the 'in connection with' prong [is] met."  Dommert v.

Raymond James Financial Serv. Inc., No. 1:06 civ. 102, 2007 WL 1018234, at *11 (E.D. Tex.

Mar. 29, 2007) (rejecting plaintiffs' argument that the alleged violations related to her

relationship with defendants and not the purchase and sale of securities, as the investment

agreement "was formed and the fiduciary relationship was created because plaintiff contracted

with defendant for the management of her assets, which encompassed the purchase and sale of

-14-

stock").

Fourth, the prayer for relief requests restitution not only of WNB's fees, but the

retirement funds lost due to the purchase of fraudulent securities.  Plaintiffs themselves thereby

connect the state law claims directly to the purchase and sale of securities.  Deciding whether

Plaintiffs are entitled to this relief will involve determining WNB's role in a massive securities

fraud.  Analysis of these guideposts illustrates a strong connection between Plaintiff's state law

claims and the purchase and sale of securities, bringing them within the bounds of SLUSA.

Other courts have found SLUSA preemption for schemes, such as the one alleged by

Plaintiffs, where a defendant charged fees based on a misrepresentation concerning the value of a

security. Araujo v. John Hancock Life Ins. Co., 206 F. Supp. 2d 377, 382-83 (E.D.N.Y. 2002)

(finding that a scheme to charge insurance premiums for a period of time when no policy

coverage existed met the 'in connection with' element of SLUSA).  WNB annually reported the

value of the securities it purportedly held in each depositor's WNB account and charged fees on

the basis of this value.  However, according to Plaintiffs, WNB knew this value was fraudulent.

Courts have repeatedly found the 'in connection with' prong satisfied when misrepresentations

concern the value of a security. See Id. (citing Lander v. Hartford Life & Annuity Ins. Co., 251

F.3d 101, 106-11 (2d Cir. 2001) (finding that alleged misrepresentations as to the value of

variable annuities were in connection with its purchase); Korsinsky v. Salomon Smith Barney

Inc., No. 01 civ. 6085, 2002 WL 27775, at *5 (S.D.N.Y. Jan. 10, 2002) (finding that alleged

misrepresentations as to the value of a stock were in connection with the purchase and sale of

securities); Hardy v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 189 F. Supp. 2d 14, 18

(S.D.N.Y. 2001) (same)); Broadhead L.P. v. Goldman, Sachs & Co., No. 2:06 civ. 009, 2007

U.S. Dist. LEXIS 21302, at *12-13 (E.D. Tex. Mar. 26, 2007) (holding failure to disclose mark

ups and mark downs on bond trades to be in connection with the purchase and sale of securities);

Falkowski, 309 F.3d at 1131.

In opposition, Plaintiffs argue that the fraudulent account statements and charges were unrelated to Madoff's fraud in the purchase and sale of securities.  However, WNB's alleged misrepresentations clearly 'coincide' with the Ponzi scheme.  Even more importantly, Plaintiffs allege that WNB knew that some of its own statements concerning securities transactions were untrue. (Amend. Compl. ¶ 42).  Plaintiffs cite to Green v. Ameritrade, Inc., 279 F.3d 590, 598-99 (8th Cir. 2002), where investors alleged that fees charged in connection with a 'real-time' stock information service were fraudulent because the provided information was in fact delayed by more than an hour.  Although the court held the state law claims not precluded by SLUSA, this case is distinguishable as the Green court found that plaintiffs were merely not receiving a contracted for service.

Finally, Plaintiffs cite to Gavin v. AT & T Corp., 464 F.3d 634, 639 (7th Cir. 2006), which holds that more than 'but-for' causation between the injury and a securities transaction is needed to satisfy SLUSA's 'in connection with' requirement.  However, the Amended Complaint alleges much more than 'but-for' causation between Plaintiffs' lost funds and fraudulent transactions in the securities supposedly underlying the BLM entities.  Plaintiffs allege intentional misappropriation of these funds carried out via a scheme of knowing misrepresentations of the value of securities holdings.  Given the nature of the allegations in the Complaint, the relationship between the parties, and the broad application of SLUSA espoused by the Supreme Court in Dabit, the Court finds that all counts against Defendant are "in connection with the purchase or sale of a covered security."

**E. Misrepresentation or Omission**

The final question in the SLUSA preemption analysis is whether Plaintiffs allege misrepresentations or fraud.  Preemption does not turn on whether misrepresentation is an essential legal element of the state law claims.  Under SLUSA, "preemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another.  A contrary approach, under which only essential legal elements of a state law claim trigger preemption, is inconsistent with the plain meaning of the statute.  Furthermore, it would allow artful pleading to undermine SLUSA's goal of uniformity." Rowinski 398 F.3d at 300 (holding that allegations of materially misleading research reports and biased investment analysis readily satisfied the misrepresentation requirement).

Courts in this circuit "must look beyond the face of the complaint to the substance of plaintiff's allegations to determine whether SLUSA preemption applies." Paru v. Mutual of America Life Insurance Co., No. 04 civ. 6907, 2006 WL 1292828, at *3 (S.D.N.Y.  May 11, 2006).  The court must "look beyond the explicit allegations of the complaint and the state law labels the plaintiffs employ to the 'gravamen' or 'essence' of the claims." Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc., 341 F. Supp. 2d 258, 265 (S.D.N.Y. 2004).  The Xpedior court applied the instructive 'necessary component' test, "wherein a court must determine whether the state law claim relies on misstatements or omissions as a necessary component of the claim.  In this context, 'necessary component' encompasses both technical elements of a claim as well as factual allegations intrinsic to the claim as alleged.  Thus, under the 'necessary component' test, a complaint is preempted under SLUSA only when it asserts 1) an explicit claim of fraud, e.g., common law fraud or fraudulent inducement; or 2) other

garden-variety state law claims that 'sound in fraud.'" Id. at 266; LaSala v. Bank of Cyprus

Public Co. Ltd., 510 F. Supp. 2d 246, 272 (S.D.N.Y. 2007).

### i. Counts VI and VII: CUTPA and Theft

Plaintiffs admit that counts VI and VII, which assert claims on behalf of the class for theft

and CUTPA violations, allege untrue statements and false representations.  Plaintiffs argue,

however, that these claims are not precluded by SLUSA because the misrepresentations were not

in connection with the purchase or sale of securities. (Pls.' Mem. in Support of Remand and in

Opp. to Mot. to Dismiss at 28-34.)  These arguments have been discussed and dismissed in the

previous section.  The alleged fraudulent scheme coincides with securities transactions.

Furthermore, it is unmistakable that these two counts meet the 'necessary component'

test, as they both make explicit claims of fraud.  Count six alleges that "WNB falsely represented

that it was holding shares" (Amend. Compl. ¶ 63) and that "through its false representations as

aforesaid, WNB was able to wrongly misappropriate funds from the accounts of the members of

the Plaintiff class through false pretenses." (Id. ¶ 64).  Likewise, count seven alleges that

"Defendant is liable to the members of the Plaintiff class for the funds misappropriated and

obtained by false pretenses by WNB." (Id. ¶ 64.)  These explicit accusations meet the SLUSA

requirement of "misrepresentations or omissions in connection with the purchase or sale of a

covered security" and **counts six and seven** of the Amended Complaint are therefore **dismissed**.

### ii. Count V: Breach of Contract

Plaintiffs argue that this count is based solely on the express provisions of the custodian

agreements and contain no allegations of fraud or misrepresentation.  Plaintiffs are correct that

the legal elements for breach of contract do not include proof of a misrepresentation or untrue

statement.  However, this Court is unpersuaded that this count is a straightforward breach of

contract claim.  It cannot be separated from the rest of the complaint, which alleges a coherent

scheme.  Furthermore, count V explicitly incorporates paragraphs 1-54 of the Amended

Complaint (Amend. Comp. at Count V), which are replete with allegations of untrue and

misleading statements.  Incorporating allegations of fraud made in support of other claims is

grounds for dismissal of this count. In re Mutual Funds Inv. Litig. 2005, 384 F. Supp. 2d 845,

871-72 (D. Md. 2005) (dismissing state law counts of a consolidated amended complaint because

plaintiffs incorporated by reference all of the allegations of fraud and misrepresentation made in

support of other claims); Rowinski 398 F.3d at 300; see also Hines v. ESC Strategic Funds, Inc.,

No. 3:99 civ. 0530, 1999 WL 1705503, at *6-7 (M.D. Tenn. Sept. 17, 1999) (dismissing breach

of contract allegations because representations referred to in that count had been described as

fraudulent earlier in the complaint).  The gravamen of the Amended Complaint is a fraudulent

scheme in connection with the purchase and sale of securities.  The breach of contract allegations

are an integral part of that scheme and therefore cannot escape SLUSA preemption.  **Count five**

of the Amended Complaint is therefore **dismissed**.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Remand [Doc. No. 24] is **denied.**

Plaintiffs' Motion to Remand Named Plaintiffs' Individual Claims [Doc. No. 15] is **granted.**

Defendant's Motions to Dismiss [Doc. Nos. 14, 37] are **granted in part and denied in part.**  In

sum, Counts I-IV of the Amended Complaint are remanded to the Superior Court and Counts V-

VII of the Amended Complaint are dismissed.

SO ORDERED.

Dated at New Haven, Connecticut, this  22nd  day of December, 2009.

/s/
Peter C. Dorsey
U.S. District Judge